OPINION OF THE COURT
 

 Kaye, J.
 

 Police officers injured while attempting to subdue an escaped mental patient cannot, in general, recover damages against the State for negligence in connection with the patient’s escape.
 

 Claimants — Suffolk County Police Officers Joseph Santangelo and Fred Kirschenheiter — were injured on July 15, 1979 when they attempted to apprehend Brian Bordes, an escaped mental patient, and return him to Kings Park Psychiatric Center.
 

 Bordes had a history of confinement and escape from Kings Park. Several times Bordes was delivered there by Suffolk County police officers, most recently on May 9, 1979 when he was involuntarily committed after having fired a rifle into a cabinet at his grandparents’ home. Police directed the hospital staff to inform them if he was discharged because there were warrants outstanding for his arrest. But the hospital’s supervision failed yet again, and on May 17 Bordes — considered potentially dangerous to himself and others — escaped once more. The hospital notified the family and the police of the escape, but when Bordes remained at large for 30 days, the hospital simply marked him "discharged”, meaning that its records no longer reflected that he had escaped. Suffolk County police were notified of the "discharge” and canceled the alarm on Bordes. Thus, on July 15 there was no notification in police records of his escape or his potential dangerousness.
 

 On the morning of July 15, 1979, Bordes’ uncle called Suffolk County police headquarters and advised Santangelo that Bordes was an escapee from Kings Park and was at his
 
 *396
 
 grandparents’ home, that he feared for their welfare, and that Bordes previously had fled at the sight of uniformed police officers. Santangelo determined from the office teletype file that there were no outstanding alarms for Bordes, and with Kirschenheiter went to apprehend him. They found Bordes seated on the living room couch. When they identified themselves as police, Bordes produced a knife from his pocket and threatened them with it. In their ensuing efforts to subdue Bordes, including spraying chemical mace and shooting at him, both officers were injured.
 

 Claimants thereafter instituted personal injury suits against the State, asserting two theories: that the State was negligent in permitting this dangerous patient to escape and remain at large, and that the State violated Department of Mental Hygiene regulations regarding escapees in marking Bordes "discharged” and in failing to give them the required particular notice of his escape and dangerousness. The Court of Claims found both that the State was negligent and that it had violated regulations by marking Bordes "discharged” after his escape. However, the court denied claimants any recovery because public policy precluded it, because claimants were not within the class intended to be protected by the regulations and because, even if they were, the requisite notification had in effect been made. The Appellate Division affirmed (127 AD2d 647). We granted leave and now affirm.
 

 It is a long-standing common-law rule that firefighters injured while extinguishing fires generally cannot recover against the property owners or occupants whose negligence in maintaining the premises occasioned the fires
 
 (see, Kenavan v City of New York,
 
 70 NY2d 558;
 
 McGee v Adams Paper & Twine Co.,
 
 20 NY2d 921,
 
 affg on opn below
 
 26 AD2d 186). The rule has been recognized in the statutory law of this State by the adoption of General Municipal Law § 205-a, creating a cause of action where none would otherwise exist, for firefighters sustaining "injuries while engaged in extinguishing a fire on premises wherein the owner or other person in control negligently failed to comply with the requirements of some statute, ordinance, or rule respecting the maintenance and safety of such premises.”
 
 (Kenavan v City of New York,
 
 70 NY2d 558, 567,
 
 supra.)
 

 The initial rationale for the common-law rule — known as the "fireman’s rule” — was that firefighters entering upon premises were no more than licensees, and therefore took the
 
 *397
 
 property as they found it
 
 (see, Flowers v Rock Creek Terrace,
 
 308 Md 432, 520 A2d 361; Prosser and Keeton, Torts § 61, at 429; Annotation,
 
 Liability of Owner or Occupant of Premises to Fireman Coming Thereon in Discharge of his Duty,
 
 11 ALR4th 597). Later cases have rejected the premises-based rationale and instead cast the general denial of liability in terms of assumption of risk: persons who choose to become firefighters assume the risks of fire-related injuries, including the risk of negligence of property owners and occupants in maintaining their premises
 
 (see, e.g., McGee v Adams Paper & Twine Co.,
 
 26 AD2d, at 190,
 
 supra; see also, Pottebaum v Hinds,
 
 347 NW2d 642 [Iowa];
 
 Calvert v Garvey Elevators,
 
 236 Kan 570, 694 P2d 433;
 
 Armstrong v Mailand,
 
 284 NW2d 343 [Minn];
 
 Krauth v Geller,
 
 31 NJ 270, 157 A2d 129). The "fireman’s rule” has also been grounded on public policy: municipalities employ firefighters precisely because special skills and expertise are required to confront certain hazards — usually of an emergency nature — that expose the public to danger, these hazards often arise from negligence, and as a matter of public policy firefighters trained and compensated to confront such dangers must be precluded from recovering damages for the very situations that create a need for their services
 
 (see, e.g., Krauth v Geller,
 
 31 NJ 270, 157 A2d 129,
 
 supra).
 

 These policy considerations — which in our view most aptly support the rule — are relevant as well to police officers injured in the line of duty
 
 (see, e.g., Walters v Sloan,
 
 20 Cal 3d 199, 202, 571 P2d 609, 610-611;
 
 Flowers v Rock Creek Terrace,
 
 308 Md 432, 442, n 4, 520 A2d 361, 366, n 4,
 
 supra
 
 [citing other jurisdictions so holding];
 
 but see, Christensen v Murphy,
 
 296 Ore 610, 678 P2d 1210 [abolishing the rule], and
 
 Kreski v Modern Wholesale Elec. Supply Co.,
 
 151 Mich App 376, 390 NW2d 244 [rejecting the rule]; Note,
 
 Oregon Abolishes the Fireman’s Rule
 
 — Christensen
 
 v Murphy,
 
 19 Suffolk UL Rev 957 [1985]). Like firefighters, police are the experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence, and like firefighters they generally cannot recover damages for negligence in the very situations that create the occasion for their services. Apprehending an escaped mental patient— who may well have escaped owing to negligent supervision, and may well be dangerous — is a function particularly within the scope of duty of police officers
 
 (see, e.g.,
 
 Mental Hygiene Law § 29.19). Nor are police officers left unprotected by such a rule. They receive both training that enables them to mini
 
 *398
 
 mize the dangers their occupation requires them to face, and compensation and special benefits to help assure that the public will bear the costs of injuries suffered by its protectors in the line of duty.
 
 (See, e.g.,
 
 General Municipal Law art 10 ["Firemen and Policemen”]; Retirement and Social Security Law art 8 ["New York State Policemen’s and Firemen’s Retirement System”].)
 

 Both the Court of Claims and the Appellate Division, in denying recovery, relied on the doctrine of assumption of risk and particularly on
 
 Arbegast v Board of Educ.
 
 (65 NY2d 161), holding that express rather than implied assumption of risk applied here. Claimants now urge that the risk they confronted exceeded any they assumed and that the "special relationship” they had with Kings Park, both by virtue of Mental Hygiene Law § 29.19 and by virtue of the special facts, entitles them to recovery. While we affirm the result reached by both courts, we make clear that our decision is not predicated upon principles of comparative fault but rather upon sound considerations of public policy resting on the nature of the occupation — which often requires police to confront negligently created emergencies on behalf of the public. Here the anomaly of permitting recovery by police officers would be particularly evident: allowing recovery against the State for injuries incurred while apprehending an escaped mental patient would result in the payment of damages by the public for injuries sustained by the experts it employs to deal with such situations.
 

 The trial court additionally rejected claims based on violation of particular statutes and regulations, finding them without basis in fact or law, and the Appellate Division affirmed. In their argument to this court, however, claimants do not press those contentions, and we need not address them.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs. .
 

 Chief Judge Wachtler and Judges Simons, Alexander, Hancock, Jr., and Bellacosa concur; Judge Titone taking no part.
 

 Order affirmed, with costs.