OPINION OF THE COURT
Hancock, Jr., J.
Plaintiff, a police officer, was injured when the police vehicle in which she was riding as a "recorder” struck another vehicle in responding to an "officer in need of assistance emergency call”. The decisive issue presented in plaintiff’s appeal is whether the Appellate Division properly reversed the judgment against the City after a jury verdict and dismissed the complaint under Santangelo v State of New York (71 NY2d 393) which holds that police officers like firefighters generally cannot recover for injuries resulting from the special risks inherent in the duties they are engaged to perform (id., at 397). For reasons which follow we hold that the dismissal was proper and, accordingly, affirm.
I
The following facts taken from the trial testimony are pertinent. On December 14, 1984, plaintiff, in performance of her duties as a police officer, was riding as a passenger "recorder” in a police car operated by Officer Bakal. At about 9:00 p.m. the police car received a "1013” call — a top-priority call, which must be responded to, indicating that a fellow officer is in trouble and needs assistance. When the call was received, it was dark and just beginning to rain. In responding to the "1013”, plaintiff and Officer Bakal proceeded at approximately 40 miles per hour with the car’s red light flashing and sirens sounding. The accident occurred when the police car crashed into the rear of defendant Hall’s automobile which was stopped at an intersection for a red light. There was a conflict in the proof as to whether defendant Hall had changed lanes immediately prior to the impact.
At the conclusion of the evidence, the City moved to dismiss plaintiff’s complaint under the Santangelo rule. The Court denied the City’s motion and submitted the case to the jury which found that defendant Hall was free of fault and that *588 Officer Bakal’s negligence was the sole cause of the collision. Plaintiffs complaint was subsequently dismissed as against defendants Bakal and Hall. The action against those defendants is not before this Court.
The trial court denied the City’s motion to set aside the verdict and its renewed motion to dismiss under Santangelo. The court, however, granted the City’s motion to reduce the verdict and entered a judgment for the reduced sum. The City appealed to the Appellate Division and plaintiff cross-appealed on the question of the reduction in damages. Citing Santangelo, the Appellate Division unanimously reversed and dismissed the complaint. Although the theory was not pleaded in the complaint or asserted before the trial court, the Appellate Division, in the exercise of its discretion, considered and rejected plaintiffs unpreserved contention that there was a basis for the City’s liability under General Municipal Law § 205-e.
We granted leave to appeal to plaintiff to address her contention that the Santangelo rule does not apply because the action falls within the exception to that rule which assertedly applies when there is a sufficient degree of separation between the negligent act causing the injury and the event which occasioned the services being performed. In this Court, plaintiff argues additionally that the Appellate Division erred in rejecting her argument pertaining to General Municipal Law § 205-e. However, because the General Municipal Law § 205-e theory was not submitted to the jury for its consideration and was thus unpreserved, that theory is not available to plaintiff in this Court as a basis for reversal (see, Lichtman v Grossbard, 73 NY2d 792, 794-795; Gordon v American Museum of Natural History, 67 NY2d 836, 837, n). We turn to a discussion of plaintiffs arguments concerning Santangelo.
II
In Santangelo, this Court decided that the so-called "fireman’s rule” (see, e.g., McGee v Adams Paper & Twine Co., 26 AD2d 186, 190, affd on opn below 20 NY2d 921) should be applied to claims of police officers as well as those of firefighters for injuries resulting from the particular dangers associated with the performance of their duties (Santangelo, supra, at 397-398). We observed that the "fireman’s rule” was grounded on the public policy that "firefighters trained and compensated to confront such dangers [i.e., risks of negligence- *589 related injuries in fighting fires] must be precluded from recovering damages for the very situations that create a need for their services” (id., at 397). We pointed out that in the more recent cases cited from other jurisdictions the rationale for the "fireman’s rule” has been cast "in terms of assumption of risk: persons who choose to become firefighters assume the risks of fire-related injuries, including the risk of negligence of property owners and occupants in maintaining their premises (see, e.g., McGee v Adams Paper & Twine Co., 26 AD2d, at 190, supra; see also, Pottebaum v Hinds, 347 NW2d 642 [Iowa]; Calvert v Garvey Elevators, 236 Kan 570, 694 P2d 433; Armstrong v Mailand, 284 NW2d 343 [Minn]; Krauth v Geller, 31 NJ 270, 157 A2d 129” (id., at 397 [emphasis added]). We concluded that these same policy considerations are equally relevant to line-of-duty injuries sustained by police officers. Thus, plaintiff Santangelo was precluded from recovering for injuries incurred in apprehending an escaped mental patient because such function was within the scope of a police officer’s duties and the risk of injury was inherent in the task. Here, as in Santangelo, plaintiff, in riding as a passenger "recorder” in a vehicle responding to a "1013” emergency call, was performing a function endowed with the special risks inherent in the duties of a police officer. It is undisputed that responding to an emergency call would require crossing intersections in excess of the speed limit and against the traffic signals, irrespective of weather and lighting conditions, with the attendant possibility of collision. Responding to such an emergency entails risks that are clearly inherent in the type of police duties contemplated by the Santangelo rationale.
Plaintiff argues, however, that the Santangelo rule should not apply because the negligence causing her injuries — i.e., the improper driving of Officer Bakal — was separate and distinct from the incident which necessitated the police car’s emergency response to the "1013” call. Plaintiff cites Appellate Division decisions as authority for her asserted "separate and distinct” exception to the Santangelo rule (see, e.g., Janeczko v Duhl, 166 AD2d 257, 259-261; Sharkey v Mitchell’s Newspaper Delivery, 165 AD2d 664; Starkey v Trancamp Contr. Corp., 152 AD2d 358, 361; but see, Pascarella v City of New York, 146 AD2d 61, 68-69, lv denied 74 NY2d 610 [Santangelo applied to preclude recovery of policeman injured in explosion while investigating report of terrorist bomb]; Buckley v City of New York, 176 AD2d 207, 208, lv denied 79 NY2d 757 [San-tangelo a bar to claim of policemen injured in apprehending *590 criminal suspect based on City’s failure to follow operating procedures]). The "separate and distinct” exception which plaintiff would have us adopt is that articulated in Starkey— i.e., that the application of Santangelo should depend on "the degree of separation between the negligent act directly causing the injury and the act which occasioned the police officer’s services” (Starkey, supra, at 361 [emphasis added]). In Starkey, the Appellate Division declined to apply Santangelo because the injury sustained by a police officer from a defective condition at a construction site was separate and apart from the reason for his being at the site.
Our Court, however, has never adopted the proposed "separate and distinct” exception and, indeed, to do so would be inconsistent with the rationale of Santangelo. Rather, as noted in Pascarella (supra, at 68-69) and Buckley (supra, at 208) the determinative factor is whether the injury sustained is related to the particular dangers which police officers are expected to assume as part of their duties. Thus, in Pascarella, where plaintiff’s claim against the City was based, in part, on the negligence of other police officers in failing to follow instructions for bomb disposal, the Appellate Division dismissed the claim, quoting our statement in Santangelo that police officers "receive both training that enables them to minimize the dangers their occupation requires them to face, and compensation and special benefits to help assure that the public will bear the costs of injuries suffered by its protectors in the line of duty” (Santangelo, supra, at 397-398).
The Pascarella Court added that "individuals who elect to join the uniformed services do so with knowledge of the dangers attendant upon those occupations and the distinct possibility that they might be hurt in the course of their employment. It is precisely because being a police officer is so hazardous that the Legislature has provided for added benefits to those injured in the line of duty” (Pascarella, supra, at 69-70; see, Buckley v City of New York, supra, at 208 [citing Santangelo for the proposition that police officers may not generally recover damages for negligence relating to hazards and emergencies for which they are trained and compensated]). Here, there is no question that plaintiff’s injuries were related to a particular risk that she had assumed as part of her duties. Part of that risk was the possibility of injury while rushing to the scene of an emergency. That no connection can be shown between Officer Bakal’s negligence and the unknown incident that gave rise to the emergency call is of no moment. *591 What matters is the connection between plaintiff’s injury and the special hazard that plaintiff assumed as part of her police duties.
Plaintiff contends, however, that even though her claim is related to special hazards inherent in the police function, Santangelo should not apply because her claim against the City is based on the negligence of a fellow servant. In effect, she argues that all fellow-servant claims of negligence against the City are actionable because we have abrogated the general common-law fellow-servant doctrine, which traditionally prohibited recovery by an employee against an employer based on the negligence of another employee (see, Buckley v City of New York, 56 NY2d 300, 305 [concluding that the "fellow-servant rule is no longer to be followed in New York”]; see also, Poniatowski v City of New York, 14 NY2d 76, 81). Nothing in our Santangelo decision supports that argument. To carve out an exception for claims otherwise falling within Santangelo but resulting from the negligence of fellow servants would amount to a contradiction of the rule’s rationale. The policy reasons — i.e., that police officers and firefighters are trained and compensated to encounter the special hazards inherent in their work and assumed as part of their employment — apply equally whether these hazards relate to negligence of third parties or fellow servants (Santangelo, supra, at 396-397). Moreover, to engraft such an exception onto Santangelo would create an obvious anomaly. Police officers injured by the negligence of a third party in a work-related accident resulting from a risk inherent in their work would be barred under Santangelo but those injured in similar circumstances by the negligence of fellow servants would be permitted to recover. We thus reject the broad "fellow-servant exception” to San-tangelo urged by plaintiff and apparently the dissent.
We emphasize, however, that the Santangelo rule does not preclude all causes of action against a municipality for injuries resulting from a fellow police officer’s negligence; nor is Santangelo at odds with our previous holdings in which we abrogated the general prohibition of the fellow-servant rule (see, Buckley, 56 NY2d 300, supra; and Poniatowski, supra). As noted, the Santangelo rule bars only those claims for injuries caused by the negligence of a fellow police officer when the injury is related to the dangers that are associated with police functions — as, for example, for an injury resulting from a bomb explosion (see, Pascarella, supra), an injury caused from the improper apprehension of a suspect (see, Buckley, 176 *592 AD2d 207, supra) or, as here, for injuries sustained in responding to an emergency "1013” call. Obviously, injuries could be sustained by police officers as a result of negligence of their fellow officers during the performance of their work which are wholly unrelated to the assumed risks of police duty. It follows that Santangelo and the precedent of this case would not be a bar to the wide range of claims based on negligence of fellow servants where the risk factors on which the Santangelo decision is predicated are not present (see, Kenavan v City of New York, 70 NY2d 558, 569; Buckley, 56 NY2d 300, supra).
Finally, our decision today is consistent with our holding in Kenavan in which the claims against the municipality were dismissed for a different and unrelated reason, i.e., on the basis of the general governmental immunity rule protecting a municipality from liability for "judgmental errors in the exercise of its governmental functions (see, e.g., Weiss v Fote, 7 NY2d 579, 584-587)” (Kenavan, supra, at 569; see, McCormack v City of New York, 80 NY2d 808, 811 [dismissing the claim on the same ground and citing, inter alia, Haddock v City of New York, 75 NY2d 478, 484]).
The concerns expressed in the dissent, we believe, are sufficiently answered by the points already made: (1) that the Santangelo rule is a narrow one covering only claims arising out of the special hazards inherent in police functions; (2) that our holding here neither overrules nor limits our previous decisions abrogating the traditional common-law fellow-servant rule; and (3) that our holding does not affect a broad area of claims based on negligence of fellow servants outside of those which fall within the Santangelo rule.
The order of the Appellate Division should be affirmed, with costs.