Frank MADONNA, Plaintiff–Appellant,

v.

AMERICAN AIRLINES, INC., Defendant–Appellee.

No. 1341,
Docket 95–9080.

United States Court of Appeals,
Second Circuit.

Argued April 5, 1996.

Decided April 22, 1996.

Michael D. Tryon, Westermann & Tryon, Garden City, N.Y., for Plaintiff–Appellant Frank Madonna.

Peter Hoenig, Biedermann, Hoenig, Massamillo & Ruff, New York City (Michael Buchman, on the brief), for Defendant–Appellee American Airlines.

Before KEARSE, JACOBS and CABRANES, Circuit Judges.

PER CURIAM:

Frank Madonna, a Port Authority police officer, appeals from a decision of the United States District Court for the Southern District of New York (Patterson, *J.*), granting summary judgment in favor of American Airlines on Madonna's common law negligence claim and on his claim under section 205–e of New York's General Municipal Law. The complaint alleged that American Airlines was negligent in maintaining a curb outside its terminal at John F. Kennedy International Airport, and that Madonna injured himself by falling off that curb while transporting a sick passenger from the terminal to an ambulance. On appeal, Madonna claims that (i) the "firefighter's rule" does not preclude recovery on his common law negligence claim; and (ii) his section 205–e claim should not have been dismissed on summary judgment, because a question of material fact exists as to whether American constructed the curb. We affirm the decision of the district court for the reasons stated herein.

## BACKGROUND

At all times relevant to this appeal, American leased a terminal at JFK Airport from the Port Authority, which in turn leased the premises from the City of New York. It is undisputed that American was responsible for maintaining the leased premises, which included the curb and sidewalk outside the terminal.

From 1979 until May 1994, Frank Madonna was employed by the Port Authority as a police officer at JFK Airport. Madonna was on duty on May 21, 1994, when he received a call from American Airlines requesting assistance for an unconscious woman at American's terminal. Madonna and another officer responded to that call in an ambulance, which they double-parked outside the terminal entrance while they tended to the ailing woman. Madonna and the ambulance attendant placed the woman on a wheeled stretcher and rolled the stretcher out of the terminal, onto the adjacent sidewalk and to the edge of the curb. Madonna and the attendant then attempted to lower the stretcher from the curb to the street. Madonna was at the rear of the stretcher, walking forward, while the ambulance attendant was at the front, walking backward. The attendant stepped off the curb first and lifted the stretcher (so that its wheels were several inches off the ground) to

keep it level. Madonna walked slowly forward but the stretcher blocked his view of the curb.[1] As Madonna "went to step down ... there was nothing there, and poosh."

Madonna suffered a tear of the medial meniscus in his knee, and underwent orthopedic surgery. Madonna's injuries are permanent, and he has accepted a disability retirement from the police force.

On January 25, 1995, Madonna filed his complaint in New York State Supreme Court, New York County. On February 21, 1995 American removed the action from state court to federal district court. On June 1, 1995, American moved for summary judgment of Madonna's claims. On September 19, 1995, the district court entered an opinion and order granting summary judgment in favor of American on the grounds that (i) the firefighter's rule barred Madonna's common law negligence claim; and (ii) Madonna could not state a claim under section 205–e because the Port Authority (not American) was the entity responsible for constructing the curb.

## DISCUSSION

■ This Court reviews a grant of summary judgment *de novo*. *Orange Lake Assocs., Inc. v. Kirkpatrick,* 21 F.3d 1214, 1217 (2d Cir.1994). We will affirm an award of summary judgment only when the moving party demonstrates that the evidence, when viewed in a light most favorable to the opposing party, presents no genuine issue of material fact. *Id.*

A. *Common Law Negligence Claim.*

■ New York employs the "firefighter's rule," a common law doctrine that bars firefighters and police officers from recovering for injuries caused by "negligence in the very situations that create the occasion for their services." *Santangelo v. State,* 71 N.Y.2d 393, 397, 526 N.Y.S.2d 812, 814, 521 N.E.2d 770, 772 (1988). The determinative factor in applying the firefighter's rule is "whether the injury sustained is related to the particular dangers which police officers [and firefight-

ers] are expected to assume as part of their duties." *Cooper v. City of New York,* 81 N.Y.2d 584, 590, 601 N.Y.S.2d 432, 434, 619 N.E.2d 369, 371 (1993).

■ The requisite connection between the injury and the hazards associated with the duties of a police officer or a firefighter exists where

the performance of the police officer's or firefighter's duties increased the risk of the injury happening, and did not merely furnish the occasion for the injury. In other words, where some act taken in furtherance of a specific police or firefighting function exposed the officer to a heightened risk of sustaining the particular injury, he or she may not recover damages for common-law negligence.

*Zanghi v. Niagara Frontier Transp. Comm.,* 85 N.Y.2d 423, 439, 626 N.Y.S.2d 23, 28, 649 N.E.2d 1167, 1172 (1995) (emphasis omitted). An officer may overcome the firefighter's rule if he is injured because he "happened to be present in a given location, but *was not engaged in any specific duty* that increased the risk of receiving that injury." *Id.* at 440, 626 N.Y.S.2d at 28, 649 N.E.2d at 1172 (emphasis added).

■ In the instant case, the district court determined that "[r]isks of injury encountered by officers as a result of responding to emergencies," such as the risk of injury faced by Madonna, "fall within the scope of this rule." On appeal, Madonna contends that the district court failed to focus on Madonna's specific actions at the time that he was injured, and that the district court was required to make a specific inquiry into whether his actual conduct "increased the risk of the injury happening." *Id.* at 439, 626 N.Y.S.2d at 28, 649 N.E.2d at 1172 (emphasis omitted). Madonna contends that his conduct—"simply walking over a curb area"— did not increase the risk of injury because "injury could have happened to any other person attempting to navigate" the curb.

Madonna has a point. An officer who, while responding to an emergency, is injured

1. Madonna testified that "I couldn't see the curb. See, I was looking straight ahead.... I knew there was a curb there, but I didn't know exactly where it was, and when I stepped off and the stretcher kept on going and I fell ... it was a long distance down."

by "a flower pot that fortuitously falls from an apartment window" would not be barred from recovering by the firefighter's rule. *Id.* at 440, 626 N.Y.S.2d at 28, 649 N.E.2d at 1172. We also agree with Madonna that the court could only have granted summary judgment if there were no question that Madonna was "engaged in [a] specific duty that increased the risk of receiving that [particular] injury." *Id.* However, we do not agree with Madonna's contention that "any airline passenger undertaking normal activities at the airport probably would have suffered the same injury...." It is undisputed that Madonna was carrying a person on a hospital gurney to an ambulance in the course of his duties as an officer. It is also undisputed that the gurney blocked his forward vision of the curb. Thus, Madonna was engaged in a specific duty that increased his risk of receiving injury—and he is therefore barred by the firefighter's rule from recovery on his common law negligence claim.

### B. *Statutory Claim.*

■ New York General Municipal Law section 205–e mitigates the firefighter's rule by permitting officers to recover for injuries that result from someone's negligence in "failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments." N.Y.Gen.Mun.Law § 205–e(1) (McKinney Supp.1996). In order to state a claim under section 205–e, a plaintiff must "identify the statute or ordinance with which the defendant failed to comply, describe the manner in which the firefighter [or police officer] was injured, and set forth those facts from which it may be inferred that the defendant's negligence directly or indirectly caused the harm." *Zanghi,* 85 N.Y.2d at 441, 626 N.Y.S.2d at 29, 649 N.E.2d at 1173 (construing substantially similar provision in section 205–a with respect to firefighters).

Madonna identified section 19–111 of New York City's Administrative Code as the statute that was violated. Section 19–111 mandates that all curbs be of the "dimensions and construction required in department specifications ... which shall be prescribed by the commissioner and kept on file." According to a New York City interdepartmental memorandum dated January 27, 1978, the "standard height of curbs shall be seven inches." Madonna proffered that memorandum in opposition to American's motion for summary judgment, together with an affidavit of John J. Flynn, a licensed professional engineer who inspected the curb and measured its height at between eight and three-quarters inches and nine and three-quarters inches. The district court granted summary judgment for American on the ground that it was the Port Authority that constructed the curb, violated the interdepartmental memorandum, and was responsible for the injury under section 205–e.

■ On appeal, Madonna argues that the issue of who constructed the curb is an open question of fact because neither party submitted proof on that issue to the district court. We agree with Madonna, and conclude that the district court should not have decided that question of fact in American's favor. *See Orange Lake Assocs.,* 21 F.3d at 1217.

Nevertheless, Madonna is precluded from sustaining a claim under section 205–e against American by virtue of *St. Jacques v. City of New York,* 215 A.D.2d 75, 633 N.Y.S.2d 97 (1st Dep't 1995). In that case, two police officers sued New York City for injuries suffered when they tripped (in two unrelated incidents) on sidewalk cracks that violated the City's Charter and Administrative Code. The Appellate Division affirmed the dismissal of their claims on the ground that the Code provisions "neither diminish the City's nondelegable common law duty nor add to it." *Id.* at 78, 633 N.Y.S.2d at 99. The court reasoned that

where as here, the statutes, on which plaintiffs rely to sustain their GML § 205–e causes of action, do not create any greater duty than that which exists at common law, but merely delineate how the duty is to be fulfilled, it cannot be concluded that the specific violations alleged by the plaintiffs increased inherent risks undertaken by officers when they respond to a call or pursue a suspect. The same risk of injury would have been present whether or not

the alleged statutory violations occurred....

*Id.* at 81–82, 633 N.Y.S.2d at 101. *See also Kenavan v. City of New York,* 70 N.Y.2d 558, 567–68, 523 N.Y.S.2d 60, 63–64, 517 N.E.2d 872, 874–76 (1987).

 Like the statutes and regulations in *St. Jacques,* the regulation on which Madonna relies (section 19–111 of the Administrative Code) does not "set out that the [defendant] shall be liable to anyone upon a failure to abide" by it. *St. Jacques,* 215 A.D.2d at 82, 633 N.Y.S.2d at 101. Instead, the regulation "merely delineate[s] the rights and responsibilities of the [defendant] and the abutting land owners with respect to the [defendant's] common law nondelegable duty to maintain sidewalks and roads." *Id.* The regulation does not purport to alter the duty owed to pedestrians at common law and is "not related to ... safety." *Kenavan,* 70 N.Y.2d at 567, 523 N.Y.S.2d at 63, 517 N.E.2d at 875. Rather, the regulation provides "the relevant authorities with control over the construction, maintenance and repair of public roadways and sidewalks," *St. Jacques,* 215 A.D.2d at 78, 633 N.Y.S.2d at 99, and thus does not furnish a basis for liability.

Moreover, the interdepartmental memorandum on which Madonna relies provides that all curbs shall be constructed at a "standard" height, but does not specify by how many inches a curb may deviate from that standard, as curbs must, to compensate for sewers, crosswalks, driveways and other irregularities in the roadway and sidewalk. A seven-inch standard does not imply that a nine-inch curb is a breach of duty, or that a curb that is less than seven inches (as is common at crosswalks that are accessible to wheelchairs) is a violation of law. The common law continues to govern whether a particular curb is too high or too shallow; in this respect, the common law is not changed by an administrative rule that sets a height standard rather than a permissible range, and that does not impose liability for noncompliance. Deviation from that standard, therefore, cannot furnish a basis for American's liability to Madonna.

## CONCLUSION

For the foregoing reasons, the decision of the district court is affirmed.